No. 47,533

IRMINA OSWALD, *Appellant*, v. LORENA WEIGEL and EDGAR M. WEIGEL, *Appellees*.

(529 P. 2d 117)

Opinion filed December 7, 1974.

*Robert L. Earnest,* of Russell, argued the cause and was on the brief for the appellant.

*Simon Roth, Jr.,* of Hays, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

HARMAN, C.: This is an action to recover a one-half interest in personal property allegedly due plaintiff under the joint will of her parents. Defendants claim the property by reason of a written agreement and bill of sale executed by the parents in their lifetime. Trial to the court resulted in a judgment for defendants, from which plaintiff appeals.

Plaintiff Irmina Oswald and defendant Lorena Weigel are sisters. Their parents are Henry J. and Mary A. Hoff. Defendant Lorena is married to defendant Edgar Weigel.

The defendants Weigel lived with Henry and Mary Hoff on the latter's farm from August 1, 1952, until the death of the surviving

parent Mary on November 10, 1972. Defendants operated the farm pursuant to an oral lease with the Hoffs. There were two houses on the farm. The Weigels lived in one, the Hoffs in the other. This living arrangement continued after the death of Henry Hoff, the first parent to die.

On May 10, 1966, the Hoffs called a Hays attorney to the farm and dictated to him an agreement which was prepared and executed on that date by the Hoffs and defendants in the presence of the attorney and a banker from Victoria. This instrument is as follows:

### "AGREEMENT & BILL OF SALE

"We, Henry J. Hoff & Mary A. Hoff, parties of the first part and Edgar M. Weigel & Lorena Weigel, parties of the second part hereby agree that said parties of the first part do hereby grant bargain and sell unto the parties of the second part the following described personal property: all household goods, all tools, iron arches for a machine shed, eighteen (18) White Face Hereford cattle, one 1950 Ford automobile, all jewelry, all old scrap iron, and all personal belongings of whatsoever kind and wheresoever situated—Not to include any stocks, bonds, money or negotiable instruments—for the following consideration: Said parties of the second part agree to deliver the calf crop of the above mentioned eighteen (18) cattle for the remaining lives of the parties of the first part. Said parties of the second part further agree that in the event of the loss of any of the eighteen cattle they must be replaced for the parties of the first part so that the calf crop will always be from eighteen (18) White Face Hereford cattle for the life of the parties of the first part. Said replacement of any of the eighteen (18) cattle above mentioned to be made from a current calf crop so that the parties of the second part will not be obligated to purchase cattle for replacement.

"Witness our hands this 10th day of May, 1966.

| | |
|---|---|
| "/s/ Henry J. Hoff | "/s/ Mary A. Hoff |
| "Henry J. Hoff | "Mary A. Hoff |
| "/s/ Edgar M. Weigel | "/s/ Lorena Weigel |
| "Edgar M. Weigel | "Lorena Weigel" |
| "/s/ Don C. Staab | |
| "/s/ Joseph T. Pfeifer | |
| "Witnesses | |

At the time the agreement was entered into Henry Hoff was ninety years of age and Mary was ninety-one; however, no question has been raised as to their competency to enter into the agreement, its delivery or validity. After the execution of this instrument, according to Lorena's testimony, the defendants "continued to care for her parents and lived with them for the remainder of their lives." They took care of the eighteen head of cattle, sold the calves raised from them and deposited the sale proceeds to their parents' checking account in the Victoria bank and in a savings account in a Hays

savings association, all as provided in the agreement and bill of sale. Nearly $8,000 was thus deposited to the Hoffs' account.

The father, Henry J. Hoff, died testate on May 27, 1967. His will, executed jointly with his wife on August 18, 1954, was duly admitted to probate. The will named the two daughters, plaintiff Irmina and defendant Lorena, co-executors. The only provisions of the will which need be specifically noticed are, first, a clause giving to the surviving Hoff spouse a life estate in all the property owned by them, with a power of sale for necessary expenses, and, second, a clause stating that upon the death of the survivor all of the remaining personal property should pass to the two daughters, plaintiff Irmina and defendant Lorena, share and share alike. Other clauses disposed of the parties' realty. On July 26, 1967, while Henry's estate was in the process of administration, upon the advice of the attorney who drew the instrument entitled "Agreement & Bill of Sale," defendant Edgar filed it in the estate files in probate court. It was not filed or exhibited as a claim or demand against the estate. On August 1, 1967, the co-executors, plaintiff Irmina and defendant Lorena, filed their inventory and appraisement of the property of the estate. This instrument was signed and verified under oath. On it, under the heading of all other personal property, these items which are the subject of this lawsuit, were listed:

"Inventory                                                    Appraised Value

. . . . . .

"Household Furniture ........................................ $250.00
"13 Cows with calves @ $240.00 ............................ 3,120.00
"5 Cows @ $150.00 ......................................... 750.00
"1 Bull (½ Interest) ...................................... 150.00
"Car (2 Door 1950 Ford) ................................... 25.00
"Steel Arches for Machine Shed ............................ 150.00"

At the trial the evidence was controverted as to whether plaintiff Irmina was aware of the bill of sale prior to the death of her mother. Plaintiff testified she was not—defendant Lorena testified plaintiff saw it in the probate court files and that Mary Hoff had told plaintiff she and Mr. Hoff had given the personal property to defendants. In any event it appears that everyone connected with the Henry Hoff estate ignored, or at least took no specific action with respect to, the filed instrument. The probate court's journal entry of final settlement of Henry's estate contained the following:

"It Is Further Ordered and Adjudged by the Court that all personal property subject to the payment of debts and expenses is assigned to Mary A. Hoff as her absolute property and upon her death, the residue and remainder

shall pass to Lorena Weigel and Irmina Oswald, in equal share, share and share alike."

Mary A. Hoff died November 10, 1972. Thereafter plaintiff inquired about dividing the personal property and was informed by defendants it was theirs by virtue of the agreement and bill of sale. Defendants conceded the remainder of Mary's bank and savings accounts should be divided equally between the two sisters and that has been done. Plaintiff Irmina then commenced this action in district court to recover the items hereinbefore shown in the inventory. The trial court entered judgment for defendants after making the following findings:

### "No. 2

"The Court finds said instrument entitled Agreement and Bill of Sale, dated May 10, 1966, is a legal sale and transfer of title on the date it bears of the personal property as described therein for valuable consideration and all provisions of such consideration have been fully performed by the defendants herein. Such contract instrument is not a conditional transfer of title, but of course if the defendants as parties of the second part had not performed they would be liable in damages to the parties of the first part, Henry J. and Mary A. Hoff.

### "No. 3

"The personal property transferred in said Agreement and Bill of Sale was not properly a part of the estate of Henry J. Hoff, deceased (Joint exhibit #2) and inclusion of same in the inventory did not make it part of that estate. However, such inclusion in the inventory is not considered bad practice because of tax laws.

. . . . . .

### "No. 4

"Such Agreement and Bill of Sale is not a claim against the estate and KSA 59-2239 and 59-2241 have no application under the facts.

### "No. 5

"The Court finds the plaintiff has no valid claim for any interest in the personal property covered by the said Agreement and Bill of Sale contained in Joint exhibit #2. Such personal property has been the property of the defendants, Lorena and Edgar M. Weigel since the date thereof, May 10, 1966."

Upon appeal plaintiff principally asserts the property listed in the inventory of Henry Hoff's estate belonged to that estate and title to it passed under the order of final settlement to the surviving spouse, upon whose death it became the property of herself and Lorena in equal shares; that the agreement and bill of sale amounted to no more than a claim against the Hoffs' estate and since not pursued in probate court it was barred by the nonclaim statute, now K. S. A. 1973 Supp. 59-2239; further that jurisdiction to take property

out of a decedent's estate lies exclusively in the probate court and the district court here lacked jurisdiction to determine title differently from the probate court's rulings.

The record discloses the automobile listed in the inventory was sold by Mary Hoff in her lifetime—which she was privileged to do— and that item may be dismissed. Due to the state of the record respecting the possession of the remaining items at the time of Henry Hoff's death, separate consideration in two groups needs to be given them.

First, as to the eighteen head of cattle mentioned in the bill of sale and in the inventory: The record seems clear that upon the execution of that instrument the defendants did in fact take possession of them. They have remained in possession of them continuously since May 10, 1966, and were in such posession at the time of Henry Hoff's death. This being true it was not necessary to file and have adjudicated in probate court a claim for the cattle. If a probate court lacks jurisdiction in a particular type of action no claim need be made within the ambit of the nonclaim statute. The long established rule relating to jurisdiction of probate courts and district courts over disputed matters was stated in *Shields v. Fink, Executrix,* 190 Kan. 17, 372 P. 2d 252, as follows:

"Generally speaking, when the purpose of an action or claim is to get something out of an estate of a decedent, the probate court has exclusive original jurisdiction of the matter and the action or claim must be filed in the probate court [Citations]; but when the purpose of an action or claim is to bring something into an estate of a decedent, that is, when an estate has a claim which its personal representative is attempting to enforce, the action is to be filed in the district court or some other court of competent jurisdiction. . . ." (p. 26.)

In *In re Estate of Paronto,* 172 Kan. 7, 238 P. 2d 464, a diamond ring was found among the personal effects of a decedent at the time of her accidental death. Appellant laid claim to the ring in the probate court, asserting he had merely loaned the ring to the decedent. The administrator had not listed the ring in his inventory of the property belonging to the estate. Appellant made no claim to the ring until he did so by way of an answer to the administrator's petition for final settlement. At the hearing he offered evidence, which was not directly refuted, that the ring belonged to him. The trial court denied the claim because it was not timely filed as required by the nonclaim statute (59-2239). This court affirmed, saying there was ample evidence from which

the trial court was justified in assuming the ring was a part of the assets of the decedent; the fact the ring was found on decedent's finger was enough to make it incumbent upon anyone who claimed the right to assert that claim against the estate within the time required by the non-claim statute. The rule was iterated that "The assertion of any right against the assets of a decedent constitutes a claim against the estate and must be filed within the provisions under the nonclaim statute." (p. 10.) Although *Paronto* presents the converse of the situation in the case at bar it illustrates the importance of the element of possession in determining for jurisdictional purposes where tangible personal property is involved whether an action or claim is one to take something out of a decedent's estate or bring it in.

The bill of sale here was not an agreement by the Hoffs to convey title to defendants by some method in the future—rather it was a present conveyance of legal title to the property described therein. Defendants were in possession of the cattle at the time of decedent's death. Under these circumstances, where a claimant is in possession of tangible personal property pursuant to a bill of sale executed by a decedent, there is no effort to take anything out of an estate; hence there is no necessity for making claim for the property in the probate court administering the decedent's estate. This means the trial court here had jurisdiction to litigate the dispute as to the eighteen head of cattle.

The next question is whether the district court correctly decided the issue as to those cattle. We think it did. It is true defendant Lorena participated in the listing of these cattle in the inventory, for the ostensible reason this was good tax practice. We need not explore the validity of this explanation although it would appear that listing of the agreement as an asset would have been more appropriate than of specific items. Perhaps that result was intended to have been reached by the filing of the bill of sale. Normally we look to the inventory to see what is being assigned under the order of final settlement and nothing said herein should be taken to militate against the propriety of that practice. However, in *Hartwig v. Flynn*, 79 Kan. 595, 100 Pac. 642, this court stated and quoted approvingly:

"In *Stewart's Estate*, 137 Pa. St. 175, 20 Atl. 554, it was held that an inventory was only *prima facie* evidence that the property belonged to the estate, and that this applied not only when the property was claimed by a third party but also when the administrator claimed it himself. But the court also said:

" 'It is so extraordinary a suggestion for the administrator to lay claim as his own to that which apparently he has voluntarily inventoried as part of the estate that he can only be allowed to prevail in such claims upon the clearest and most satisfactory evidence.' (Page 181.)" (p. 600.)

Here the listing of the cattle and other items in the inventory was tempered by the previous filing of the bill of sale yet nothing was done in the probate court to inquire specifically into the validity of the listing, nothing occurred in the proceedings there which took on the adversary character of litigation, defendant Edgar Weigel was not a party to the proceeding and the property in question was not specifically mentioned in the order of final settlement. The trial court specifically found that the subject matter of the bill of sale became the property of the defendants at the time of the execution of the contract and that defendants had fully performed their part of that agreement. The Hoff estate was subject to vested rights already conveyed away by them. The trial court, under the particular circumstances of this case, ruled correctly as to the eighteen head of cattle and that part of its judgment is affirmed.

We turn now to the remainder of the property claimed by appellant. As indicated, the factual record before us as to this property is not the same as that concerning the cattle. It does not indicate who had possession of this property at the time of Henry Hoff's death. Upon oral argument counsel for the parties disputed vigorously—plaintiff asserted defendants were not in possession of items of jewelry, antiques, household goods, etc. when Henry died; defendants contended to the contrary. As we have already held, such possession is one of the determining factors as to whether the nonclaim statute (59-2239) is applicable. If defendants were in such possession they must prevail; if not, they must lose one-half of this portion of the property covered by their bill of sale by reason of their failure to have the claim timely allowed in probate court. Accordingly, as to this property the judgment is reversed and the cause is remanded with directions that the trial court determine the possession of the particular property at the critical time and render judgment in accordance with the views herein expressed.

APPROVED BY THE COURT.

FROMME, J., dissenting. Due notice having been given, a final settlement of an estate made by the probate court pursuant to the

probate code is a final order binding upon all persons interested in the estate, and the order of final settlement, if not appealed from, becomes final and conclusive against collateral attack. (*In re Estate of Seeger*, 208 Kan. 585, Syl. ¶ 1, 493 P. 2d 281.)

In the absence of evidence to the contrary, a decree of final settlement, closing a testate estate, should be construed to operate in conformance with the terms of the will and statutes pertaining to distribution of assets upon final settlement. (*In re Estate of Seeger*, supra, Syl. ¶ 3.)

Lorena Weigle as co-executor of her father's estate included this property in the inventory and appraisal. By affidavit duly sworn before the probate judge she stated ". . . that the following described property as hereinafter listed and classified is a complete inventory of the estate of Henry J. Hoff, deceased which has come to my (our) possession or knowledge as such co-executors." When the estate was closed the journal entry assigned the personal property under the residuary clause in the will to the two daughters, share and share alike.

If the appellees Weigel were claiming this property listed in the inventory by Lorena Weigel and Irmina Oswald they were required, in my opinion, to file a claim in the estate, have it set for hearing and have the matter determined within the provisions of the claim statutes. Not having done so their claim was barred. Some weight is attached to the fact that Edgar M. Weigel was not an heir or legatee in the Henry J. Hoff Estate, however he was the husband of a co-executor and was living on the same farm. He was taking care of the cattle and did file the document "Agreement & Bill of Sale" with the probate court.

The statement of law contained in paragraph one of the syllabus of this case will raise many questions in an area of the law which has heretofore been considered settled. In *Shields v. Fink, Executrix*, 190 Kan. 17, 372 P. 2d 252, it was held:

". . . The foregoing section of the probate code provides in substance that no creditor shall have a lien upon property of the decedent, other than liens existing at the date of his death, unless an executor or administrator of his estate has been appointed and such creditor shall have exhibited his demand in the probate court in the manner and within the time prescribed in such section." (Syl. ¶3.)

As applied in *Shields* this rule extends to the establishment and foreclosure of an alleged equitable mortgage on personal property. It was further stated in *Shields:*

"It was the intent and purpose of the framers of the Kansas probate code, and of the legislature which enacted it, to grant to the probate court exclusive original jurisdiction over all matters incident and ancillary to the control, management, administration, settlement and distribution of decedents' estates, including the exhibition and establishment of claims and irrespective of whether those claims be denominated legal or equitable, except as to any matter over which the probate code expressly confers concurrent jurisdiction upon the district court." (190 Kan. p. 22.)

Under the holding set forth in the first paragraph of the syllabus, if tangible personal property is not in actual possession of a decedent at the time of his death, claim need not be made in the probate court. The opinion makes no allowance for that property to which a decedent may have a present right of possession but which property is being cared for by another, such as in this case. Confusion can only result from our present holding.

The nonclaim statute should be applied and the property should be divided under the residuary clause in the will and the terms of the journal entry of final settlement in the Estate of Henry J. Hoff.